**MT. HAWLEY INSURANCE COMPANY, Appellant,**

v.

**AZIA CONTRACTORS, INC., Respondent.**

**No. WD 49017.**

Missouri Court of Appeals,
Western District.

Sept. 20, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 1994.

Robert E. Gould, Kansas City, for appellant.

Brian J. Niceswanger, Kansas City, for respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and SPINDEN, JJ.

FENNER, Chief Judge.

Appellant, Mt. Hawley Insurance Company (Mt. Hawley), appeals the judgment of the trial court granting summary judgment in favor of respondent, Azia Contractors, Inc. (Azia), on Mt. Hawley's petition for declaratory judgment.

This cause began when Azia suffered damage to its property covered under Azia's policy of insurance with Mt. Hawley. The loss occurred in November of 1988 when there was an explosion at a road construction site near Azia's property. Azia made a claim for its loss against Mt. Hawley. The parties entered into negotiations and in March of 1989 Azia agreed to settle its claim against Mt. Hawley for the sum of $328,477.56.

Azia executed a proof of loss form reflecting the amount to which it had agreed in settlement of its claim against Mt. Hawley. However, at the bottom of the form Azia added the following language:

The named insureds' agreement to the above sums is in compromise of those claims possessed by the insureds and does not prejudice their rights to pursue third

parties for their losses; insured, coinsured, and uninsured.

Upon receipt of the proof of loss form, Mt. Hawley paid the sum of $328,477.56 to Azia. Thereafter, Azia and Mt. Hawley joined as parties in a class action suit which was filed as a result of the explosion. Azia joined the class action suit as a business owner who had suffered loss from the explosion and Mt. Hawley joined as an insurance company with subrogation interests. As a result of the class action suit, Azia received $6,000 from money paid by the defendants in settlement and $230,315.28 was allocated to Mt. Hawley for its subrogation interests. Before payment was made to Mt. Hawley, Azia objected to the payment to Mt. Hawley and claimed that it was entitled to 20% of the amount paid to Mt. Hawley because the parties had shared in the original loss on an 80/20 basis.

As a result of the dispute between Azia and Mt. Hawley in the class action suit, Azia's name was placed on the check together with Mt. Hawley's in regard to the $230,-315.28 payment. The check was placed in escrow and Mt. Hawley filed this action for declaratory judgment seeking determination of the rights and interests in the settlement proceeds.

In the case at bar, Azia filed a motion for summary judgment seeking to have the entire settlement amount of $230,315.28 paid over to Azia. The motion was sustained by the trial court upon the court finding that the language added to the proof of loss form as quoted above precluded Mt. Hawley's right to subrogation. Mt. Hawley appeals the trial court's order of summary judgment.

In its first point on appeal, Mt. Hawley argues that the trial court erred by finding that Mt. Hawley bargained away its subrogation rights because such a finding was not supported by the record and because it was contrary to the law. Mt. Hawley argues that the record reflects that the parties did not intend to preclude Mt. Hawley's subrogation rights by the language added to the proof of loss form.

■ Summary judgment will be upheld on appeal where it is demonstrated, on the basis of facts as to which there is no genuine dispute, that movant had a right to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). On appeal, the record is reviewed in the light most favorable to the party against whom summary judgment was entered affording the non-movant the benefit of all reasonable inferences from the record. *Id.* Summary judgment is not appropriate where material issues of fact are in dispute. *Id.* at 378.

■ The record reflects that the settlement between Azia and Mt. Hawley, evidenced by the proof of loss form, was a compromise between the parties as to the loss suffered by Azia. As such, the language added to the proof of loss form was a binding contractual agreement between the parties. The question thus becomes one of interpretation of the contractual language employed.

■ The primary rule in interpretation of contracts is to ascertain the intent of the parties and give effect to that intent. *Marshall v. Pyramid Development Corp.*, 855 S.W.2d 403, 406 (Mo.App.1993). Where there is no ambiguity in a contract, the intent of the parties is to be determined from the contract alone and the courts will not resort to construction where the intent of the parties is expressed in clear and unambiguous language. *Id.* Where there is ambiguity, the court must examine all relevant circumstances including the relationship of the parties, the construction placed on the contract by the parties over time, and any other facts and actions which cast light on the intention of the parties. *Mal Spinrad of St. Louis, Inc. v. Karman, Inc.*, 690 S.W.2d 460, 463 (Mo.App.1985). Whether the terms of an agreement are ambiguous is a question of law. *Id.* at 464.

Once again, the disputed language added to the proof of loss form is as follows:

The named insureds' agreement to the above sums is in compromise of those claims possessed by the insureds and does not prejudice their rights to pursue third parties for their losses; insured, coinsured, and uninsured.

■ This language does not clearly and unambiguously express an intent to preclude

the subrogation rights of Mt. Hawley as otherwise granted under the contract of insurance entered into between the parties.[1] In fact, the subrogation rights of Mt. Hawley are nowhere mentioned in this language. The language could just as easily be interpreted to mean that Azia retains the right to bring a third party action for any and all of its loss in its own name. The fact that Azia is entitled to bring suit for its loss does not impact Mt. Hawley's right to subrogation.

By the language added to the proof of loss form, it is not clear whether the parties intended to impact Mt. Hawley's subrogation rights. Therefore, we find that the agreement between the parties, *i.e.*, the language added to the proof of loss form, was ambiguous and all relevant circumstances must be reviewed to determine intent.

In reviewing the actions of the parties and the construction they placed on the contract language in dispute, the record, taken in the light most favorable to Mt. Hawley, reflects that in suggesting the language in dispute, counsel for Azia advised Mt. Hawley that the importance of the language was to allow Azia to pursue excess loss against third parties. Furthermore, subsequent to payment of the loss, Azia invited Mt. Hawley to join in its action for recovery against responsible third parties. Additionally, Azia did not object to Mt. Hawley's participation in the class action suit and even argued to the court in the class action suit that because the parties had shared in the loss paid by Mt. Hawley on a 80/20 basis, Mt. Hawley was only entitled to 80% of the class action proceeds. Azia's actions would appear to be in recognition of Mt. Hawley's subrogation interests. Azia did not assert that Mt. Hawley had bargained away its subrogation rights until the present action was filed.

■ Based upon the foregoing, we find that there are material issues of fact as to the intention of the parties in regard to the contractual terms in question, *i.e.*, the language added to the proof of loss form, which issues of fact preclude summary judgment.

An additional issue that needs to be addressed for purpose of remand concerns collateral estoppel. Mt. Hawley argues that the trial court erred by entering summary judgment in favor of Azia because Azia's claims are barred by collateral estoppel. Mt. Hawley argues that by Azia participating in the class action suit and failing to contest that Mt. Hawley was a proper party to such action as an insurer holding a subrogation interest, Azia is collaterally estopped from challenging Mt. Hawley's subrogation interest.

■ Collateral estoppel is defined as issue preclusion. Collateral estoppel precludes the same parties or their privies from relitigating issues which have been previously litigated. *Asarco, Inc. v. McNeill*, 750 S.W.2d 122, 127 (Mo.App.1988).

■ Where there is a question of whether a previous decision went to the mer-

---

1. The contract of insurance issued by Mt. Hawley on behalf of Azia provided as follows:

 In the event of any payment, under this policy, this company shall be subrogated to all the named insured's right of recovery against any person or organization and the named insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

 A subsequent endorsement to the policy further provided as follows:

 SUBROGATION. This company may require from the insured an assignment of all right of recovery against the third party for loss to the extent that payment therefor is made by this company.

 With subrogation, only an equitable right passes to the subrogee and the legal title to the claim is never removed from the subrogor. However, when there is an assignment there is complete divestment of all rights from the assignor and those same rights are vested in the assign-

ee. *Kroeker v. State Farm Mutual Automobile Insurance Co.*, 466 S.W.2d 105, 110 (Mo.App. 1971). With subrogation, the exclusive right to sue for the entire loss remains with the insured although the insured holds the proceeds for the insurer. *Farmers Insurance Co. v. Effertz*, 795 S.W.2d 424, 426 (Mo.App.1990).

 In its order granting summary judgment, the trial court held that "[s]ince the insured made no 'assignment,' the insured may infer that it retained the right to recover all its losses because there was no transfer of any right of recovery."

 As direction on remand, it is noted that the policy and endorsement language cited above do not require assignment. The endorsement language merely provides that assignment *may* be requested. Lack of request of assignment does not necessarily affect Mt. Hawley's subrogation interests. The inference that the trial court made does not follow from the policy and endorsement language used.

its of the case, no preclusive effect is given to the earlier decision. *S.M.B. by W.K.B. v. A.T.W.,* 810 S.W.2d 601, 605 (Mo.App.1991). The doctrine of collateral estoppel applies when once a court has determined an issue of fact or law *necessary to its judgment,* that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first cause. *Bi–State Dev. Agency v. Whelan Sec. Co.,* 679 S.W.2d 332, 335 (Mo.App.1984).

 There was clearly no determination made of whether Mt. Hawley had a subrogation interest against Azia in the underlying class action suit. The court in the class action suit specifically avoided that question by placing the names of both parties on the funds in dispute in order that the respective rights of the parties could be determined in a different forum. There was no decision on the merits as to Mt. Hawley's subrogation interest in the class action suit. Thus, collateral estoppel does not apply.

The judgment of the trial court is reversed and this cause remanded for further proceedings.

All concur.