

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **VEERAL BHOOT, D.O., ET AL.,** | ) | |
| | ) | |
| **Appellants/Appellant-Respondent,** | ) | **WD86805 consolidated with** |
| | ) | **WD86825 and WD86860** |
| **V.** | ) | |
| | ) | **OPINION FILED:** |
| **701-709 NE WOODS CHAPEL** | ) | **DECEMBER 17, 2024** |
| **ROAD, LLC, ET AL.,** | ) | |
| | ) | |
| **Respondent/Respondents-Appellants.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable James F. Kanatzar, Judge

Before Division One:  Lisa White Hardwick, Presiding Judge, Cynthia L. Martin, Judge
and Janet Sutton, Judge

Veeral Bhoot ("Bhoot"), VSUJ Woods Chapel, LLC ("VSUJ"), and Diamond

Diagnostic Center, LLC ("Diamond Diagnostic") (collectively "Appellants") appeal, and

701-709 NE Woods Chapel Road, LLC ("701-709 Woods Chapel") and Paramjeet

Sabharwal ("Sabharwal") (collectively "Cross-Appellants") cross-appeal, from the trial

court's final judgment following two bench trials and one jury trial that collectively

resolved five claims that the Appellants alleged against the Cross-Appellants relating to

contracts for the sale of real estate and medical equipment.  The Appellants assert that the

trial court committed error in finding that the Appellants were not entitled to specific

performance of the contracts and in awarding damages to one of the Appellants for lost

rental revenues from only two of four leases entered into in anticipation of purchasing real estate owned by the Cross-Appellants. The Cross-Appellants challenge the trial court's award of attorney fees and expenses to one of the Appellants. Finding no error, we affirm.

**Factual and Procedural Background**[1]

In early 2021, Bhoot, a licensed interventional radiologist and experienced commercial real estate investor, identified a building located at 701-709 Northeast Woods Chapel Road in Lee's Summit, Missouri ("Property") that he believed would be an ideal location to establish a medical practice along with eleven other partners. At the time, the Property was owned by 701-709 Woods Chapel, a limited liability company of which Sabharwal is a member. The Property was not listed for sale, so Bhoot contacted Sabharwal to inquire whether 701-709 Woods Chapel would be willing to sell the Property. Bhoot and 701-709 Woods Chapel, via Sabharwal, began negotiations for the sale of the Property and the used medical equipment located therein.

On April 21, 2021, 701-709 Woods Chapel and Bhoot entered a commercial real estate sales contract ("Real Estate Contract") where 701-709 Woods Chapel agreed to sell the Property to Bhoot for $1.621 million. The Real Estate Contract provided that Bhoot would have forty-five days to inspect the physical condition of the Property and allowed for a sixty-day period for Bhoot to perform "due diligence . . . for the purpose of

---

[1]We view the facts in the light most favorable to the fact-finder's decision, whether the case was tried by the court or by a jury. *See Coleman v. Hartman*, 626 S.W.3d 289, 292 n.1 (Mo. App. W.D. 2021) (bench trial); *Wynn v. BNSF Ry. Co.*, 588 S.W.3d 907, 909 n.2 (Mo. App. W.D. 2019) (jury trial).

2

exploring and obtaining approval of a [c]orporate [p]artner for the intended purpose of the Property." The Real Estate Contract provided that "time and exact performance are of the essence under this Contract." The Real Estate Contract further provided that, if either Bhoot or 701-709 Woods Chapel were in default, the non-defaulting party may choose to "specifically enforce this Contract and recover damages suffered . . . as a result of the delay in the sale [or acquisition] of the Property." The Real Estate Contract provided that closing would occur on July 15, 2021, unless Bhoot and 701-709 Woods Chapel agreed to close earlier.

The Real Estate Contract acknowledged that 701-709 Woods Chapel would also be selling an x-ray machine and CT scanner to Bhoot but that those pieces of equipment would be the subject of the used medical equipment purchase agreement contract, and that, "[i]f for some reason [Bhoot] elects not to purchase the medical equipment in the contract, then that will cancel this real estate contract." On the same day the Real Estate Contract was executed, 701-709 Woods Chapel and Veeral Bhoot DO, LLC ("Bhoot LLC") entered into a used medical equipment purchase agreement ("Medical Equipment Contract"). The Medical Equipment Contract provided that 701-709 Woods Chapel would sell a CT scanner and an x-ray machine located at the Property ("medical equipment") to Bhoot LLC for $500,000. Like the Real Estate Contract, the Medical Equipment Contract provided a sixty-day due diligence period for Bhoot LLC to "perform any tests or operational procedures necessary to assure . . . that the Equipment is in working condition at the time of purchase."

3

During the course of inspections of the Property and the medical equipment, several deficiencies were discovered. Inspections of the Property revealed the presence of mold and the absence of a sprinkler system, the installation of which was necessary for the Property to be functional for Bhoot's intended use. Inspections of the medical equipment revealed that the x-ray machine was missing plates necessary for its operations. On June 14, 2021, before the due diligence period ended, Bhoot sent Sabharwal an email outlining the deficiencies found during the inspections of the Property and the medical equipment and then closed the email as follows: "We cannot take on financial burdens on these matters solely--and if the reply is not collaborative-- then unfortunately, we will need to terminate this argument this week. Hopefully that doesn't happen, but there are too many red-flags." Sabharwal responded via email later that day as follows:

> 1. The x-ray equipment comes with one . . . plate which will be provided at the time of closing.
>
> 2. CT scan doesn't come with the injector[, and] it has to be purchased separately. We never bought that.
>
> 3. The contract is for the building to be as is. [The c]ity doesn't require a sprinkler system for the purposes occupancy was given or currently present. If you need the sprinkler system for your needs th[e]n you will have to get it installed.
>
> 4. Mold I can give the discount even though the contract says as is.
>
> As is building means I am not fixing anything. Equipment has been tested and is functional except [x-]ray which we will get it functional prior to closing.

The parties amended the Real Estate Contract on June 18, 2021 ("Amendment to the Real Estate Contract"). The Amendment to the Real Estate Contract provided that 701-709

4

Woods Chapel agreed to provide one plate for the x-ray machine in order for the machine to be functional at the time of closing and agreed to give Bhoot a $100,000 credit at closing in consideration of defects found in the Property, including the presence of mold and the absence of a sprinkler system.

On June 19, 2021, Bhoot LLC assigned its rights, interests, and obligations set forth in the Medical Equipment Contract to Diamond Diagnostic. Bhoot testified that Diamond Diagnostic was formed to operate the imaging aspect of the medical practice Bhoot sought to establish on the Property with his business partners.

On June 21, 2021, Bhoot sent a series of emails to Sabharwal, the real estate broker representing 701-709 Woods Chapel, an employee of the bank providing financing for the purchase of the Property, and an attorney representing the interests of Bhoot. The first email was sent at 4:51 p.m. and read:

> The seller - is removing items from the building - and removing contents - which is a breach of contract.
>
> The building is acquired as-is - and no contents should be removed without consent.
>
> This is grounds for termination of contract.
>
> Please immediately resolve this matter today as today is the last day of the noted [due diligence] - and we will be forced to terminate.

Three minutes later, Bhoot sent another email that stated, "I have pictures of items being actively removed today - and that is not acceptable to the buyer." At 4:55 p.m., Bhoot sent another email with photographs. Then, at 4:58 p.m., Bhoot sent the final email of the day: "Terminate this contract until this matter is resolved."

5

Despite sending these emails, Bhoot assigned his rights, interests, and obligations under the Real Estate Contract to VSUJ on June 24, 2021. According to Bhoot's testimony, VSUJ was formed to hold title to the Property.

The next day, June 25, 2021, at 1:56 p.m., Sabharwal replied to the string of emails that Bhoot sent on June 21, 2021, and included all previously included recipients on his reply. Sabharwal's email stated:

> Dr. Bhoot[:]
>
> This contract is terminated as per your request. And I withdraw all amendments to the original contract because you lied to get those amendments.
>
> Please all concerned make [n]ote of this.
>
> Please don't do anything regarding this sale without my written authorization.

On July 7, 2021, an attorney representing 701-709 Woods Chapel sent the attorney representing Bhoot, VSUJ, and Diamond Diagnostic a letter formalizing the termination of the Real Estate Contract and the Medical Equipment Contract. In addition to setting forth a summary of the email exchanges between Bhoot and Sabharwal on June 21 and 25, 2021, the letter stated that 701-709 Woods Chapel "was induced to sign the [Amendment to the Real Estate Contract] through misrepresentations." The letter ended by noting that 701-709 Woods Chapel "stands ready, willing and able" to return the earnest money deposit.

6

Two days later, July 9, 2021, the Appellants filed a petition ("Petition") against 701-709 Woods Chapel, Sabharwal, and Wanda Kaniewski ("Kaniewski").[2] The Petition set forth three counts: (1) injunctive relief, specifically a permanent injunction requiring 701-709 Wood Chapel, Sabharwal, and Kaniewski to close on the sale of the Property and the medical equipment and a temporary injunction requiring 701-709 Woods Chapel, Sabharwal, and Kaniewski to keep, protect, and maintain the disputed personal property and fixtures from the Property during the pendency of the litigation' (2) breach of contract seeking specific performance of the Real Estate Contract, the Medical Equipment Contract, and the Amendment to the Real Estate Contract (collectively "the Contracts"); and (3) breach of contract seeking damages. That same day, the Appellants also filed a motion for injunctive relief that sought the same relief as the Petition.

The trial court held a hearing on July 14, 2021, and then issued a temporary restraining order ("Temporary Restraining Order") on July 19, 2021. The Temporary Restraining Order ordered 701-709 Woods Chapel, Sabharwal, and Kaniewski (1) to restrain from taking any action to dispose of the Property, the personal property therein, and the medical equipment; (2) to keep, protect, and maintain the Property, the personal property therein, and the medical equipment; and (3) to refrain from moving any personal property in the Property or the medical equipment from its current location. The trial court ordered the Temporary Restraining Order to expire in fifteen days.

---

[2]Kaniewski is Sabharwal's spouse and a member of 701-709 Woods Chapel.

On July 22, 2021, the Appellants filed a series of documents with the trial court, including Appellants' first amended petition ("First Amended Petition"). The First Amended Petition set four counts against 701-709 Woods Chapel, Sabharwal, and Kaniewski: (1) injunctive relief, specifically a permanent injunction requiring 701-709 Woods Chapel, Sabharwal, and Kaniewski to close on the sale of the Property and the medical equipment ("Count I"); (2) request for a declaratory judgment declaring the Appellants' rights and interests under the Contracts ("Count II"): (3) breach of contract seeking specific performance of the Contracts ("Count III"); and (4) breach of contract seeking damages ("Count IV"). The First Amended Petition also asked the trial court to award attorney fees to the Appellants. In conjunction with the First Amended Petition, the Appellants filed a first amended motion for injunctive relief and a motion to amend the Temporary Restraining Order.

The trial court denied the motion to amend the Temporary Restraining Order on July 27, 2021, and took up the Appellants' first amended motion for injunctive relief during a hearing on August 4, 2021, during which the parties stipulated to a preliminary injunction and agreed to have a bench trial on all pending issues except damages. The trial court entered a stipulated preliminary injunction ("Preliminary Injunction") on August 26, 2021. The Preliminary Injunction placed the same restrictions on 701-709 Woods Chapel, Sabharwal, and Kaniewski as the Temporary Restraining Order until further order of the trial court.

A one-day bench trial took place on September 3, 2021. The trial court heard testimony and received evidence regarding the negotiations that occurred before Bhoot

and 701-709 Woods Chapel executed the Real Estate Contract and the Medical Equipment Contract; the conversations between Bhoot and Sabharwal leading up to the execution of the Amendment to the Real Estate Contract; and the communications between Bhoot and Sabharwal following the execution of the Amendment to the Real Estate Contract. At the close of the Appellants' evidence, the Appellants dismissed Counts I, II, and III against Sabharwal and Kaniewski without prejudice, leaving 701-709 Woods Chapel as the remaining defendant for those counts. Sabharwal and Kaniewski remained named as defendants on Count IV.

The trial court issued a judgment on November 23, 2021. After the Appellants moved to amend the judgment, the trial court issued an amended judgment on April 6, 2022 ("April 2022 Judgment"). The April 2022 Judgment made the following findings of fact and conclusions of law: (1) the Contracts are valid and enforceable according to their terms; (2) there was insufficient evidence to establish by a preponderance of the evidence that the Contracts were rescinded by mutual consent; (3) Bhoot assigned his rights, interest, and obligations in the Real Estate Contract and the Amendment to the Real Estate Contract to VSUJ; (4) Bhoot assigned his rights, interests, and obligations in the Medical Equipment Contract to Diamond Diagnostic; (5) 701-709 Woods Chapel breached the Contracts by failing to close on the Contracts and deliver the Property and medical equipment to the Appellants; (6) specific performance of the Contracts is not appropriate because there is "no credible evidence . . . that the [Property] or [medical] equipment is sufficiently unique" and "no credible evidence . . . that there is no adequate remedy at law for [the Appellants]"; and (7) "Bhoot's threats to not perform through his

9

communications to Sabharwal" constitute unclean hands that preclude the Appellants from receiving specific performance of the Contracts. In accordance with these findings, the April 2022 Judgment entered judgment in favor of 701-709 Woods Chapel and against the Appellants on Counts I and III (the injunctive relief and specific performance counts); entered judgment in favor of VSUJ and Diamond Diagnostic and against 701-709 Woods Chapel on Count II (the declaratory judgment count), "consistent with, and limited to, the findings of fact and conclusions of law contained in this judgment"; and ordered that the matter would proceed to a jury trial on the Count IV (the breach of contract damages count) as it pertained to 701-709 Woods Chapel, Sabharwal, and Kaniewski.

On December 23, 2022, the Appellants filed a motion for leave to amend the First Amended Petition "[d]ue to facts and circumstances which have just become known to [the Appellants]," particularly that the Property had been sold to an unrelated third party and 701-709 Woods Chapel had distributed the proceeds to Sabharwal and Kaniewski. The trial court granted the motion, and the Appellants filed a second amended petition ("Second Amended Petition"). The Second Amended Petition restated Counts I through IV and added another count: alter ego liability against Sabharwal and Kaniewski based on 701-709 Woods Chapel's distribution of proceeds to Sabharwal and Kaniewski following the sale of the Property ("Count V").[3]

---

[3] Before granting the Appellants leave to file the Second Amended Petition, the trial court instructed the Appellants to label its new theory of relief--alter ego liability--as Count V in order to eliminate potential confusion caused by the trial court's earlier determination of Counts I, II, and III in the April 2022 Judgment. The Appellants'

10

The jury trial on Count IV began on January 31, 2023. At the close of the evidence, the jury returned a verdict on Count IV. With respect to breach of the Real Estate Contract, the jury found in favor of VSUJ and assessed damages at $117,489. VSUJ's damages claim argued that it was entitled to lost rental revenue on four leases VSUJ had entered into after taking an assignment of the Real East Contract and Amendment to Real Estate Contract from Bhoot. According to VSUJ, the leases would have permitted four different entities to use the Property in exchange for the payment of rent. The jury's verdict awarded damages on two of the four leases. With respect to breach of the Medical Equipment Contract, the jury found in favor of Diamond Diagnostic but assessed damages at $0. The trial court incorporated the jury's verdicts in a February 6, 2023 order ("February 2023 Order").

Then, on May 23, 2023, the trial court held a bench trial on Count V. On September 21, 2023, the trial court entered a judgment ("September 2023 Judgment"). The September 2023 Judgment adopted and incorporated all previously entered findings of fact and conclusions of law set forth in the April 2022 Judgment and the February

attorney represented to the trial court that it was not seeking relitigation of Counts I, II, and III by filing the Second Amended Petition.

Ordinarily, "[t]he filing of an amended petition abandons all prior pleadings as well as any interlocutory orders or judgments entered thereon." *Thomas v. H'Doubler*, 627 S.W.3d 449, 455-56 (Mo. App. S.D. 2021) (quoting *Poger v. Mo. Dep't of Transp.*, 501 S.W.3d 37, 43 n.1 (Mo. App. E.D. 2016)). However, it is clear from the record on appeal that neither the Appellants nor the trial court intended the effect of restating Counts I, II, and III in the Second Amended Petition to require the trial court to resolve that counts anew. Even if filing the Second Amended Petition had such an effect irrespective of the intent of the Appellants and the trial court, the trial court incorporated the April 2022 Judgment in a later judgment.

11

2023 Order. With respect to Count V, the September 2023 Judgment found that Sabharwal's control of 701-709 Woods Chapel was such that the formal legal structure of 701-709 Woods Chapel must be disregarded making Sabharwal liable for 701-709 Woods Chapel's contractual obligations and debts. The September 2023 Judgment did not find the same with respect to Kaniewski and determined she was not liable for 701-709 Woods Chapel's contractual obligations and debts. The September 2023 Judgment then concluded that because the jury did not award any damages to Diamond Diagnostic with respect to the claim that 701-709 Woods Chapel breached the Medical Equipment Contract as alleged in Count IV, the jury's verdict must be treated as a general verdict in favor of 701-709 Woods Chapel, Sabharwal, and Kaniewski. The September 2023 Judgment then ordered: (1) judgment be entered in favor of VSUJ and against 701-709 Woods Chapel in the amount of $117,489 on Count IV; (2) judgment be entered in favor of 701-709 Woods Chapel and against Diamond Diagnostic on Count IV; (3) judgment be entered in favor of VSUJ and against Sabharwal on Count V so that Sabharwal is personally liable for the judgment entered against 701-709 Woods Chapel; and (4) judgment be entered in favor of Kaniewski on Count V. Despite characterizing the September 2023 Judgment as "final," the trial court ordered that the Appellants' request for an award of attorney fees would be addressed in a separate judgment.

VSUJ filed a motion seeking an award of attorney fees and expenses on October 6, 2023 ("Motion for Attorney Fees"), asking the trial court to award VSUJ $155,448.17 in attorney fees and $6,992.66 in expenses. On October 23, 2023, 701-709 Woods Chapel and Sabharwal filed a motion for judgment notwithstanding the verdict ("Motion for

12

JNOV"). Following additional briefing, the trial court entered an order and judgment awarding attorney fees on December 4, 2023 ("December 2023 Judgment"), and an order denying the Motion for JNOV. The December 2023 Judgment: (1) granted VSUJ's Motion for Attorney Fees; (2) awarded VSUJ attorney fees in the amount of $155,448.17; and (3) awarded VSUJ expenses in the amount of $6,992.66.

The Appellants filed a notice of appeal on December 14, 2023, and the notice of appeal was received by our Court on December 15, 2023, and filed in case number WD86805. The Appellants' notice of appeal indicated that the issues they expected to raise on appeal included the trial court's refusal to grant specific performance and the trial court's award of damages to VSUJ based on fewer than all real estate leases that VSUJ had entered into with potential tenants of the Property. The Cross-Appellants filed a notice of appeal on December 26, 2023, and the notice of appeal was received by our Court on December 27, 2023, and filed in case number WD86825. The Cross-Appellants' December 26, 2023 notice of appeal indicated that they were appealing from the September 2023 Judgment and the December 2023 Judgment to challenge the amount of attorney's fees and expenses awarded to VSUJ in the December 2023 Judgment. On January 2, 2024, we ordered case number WD86805 and case number WD86825 be consolidated under case number WD86805. Then, on January 5, 2024, the Cross-Appellants filed another notice of appeal in the trial court, which was received by our Court on January 8, 2024, and filed in case number WD86860. The Cross-Appellants' January 5, 2024 notice of appeal indicated that it was being filed pursuant to Rule 74.16 to challenge the December 2023 Judgment's award of attorney fees and expenses to

13

VSUJ.[4]   On January 16, 2024, we consolidated case number WD86860 under case number WD86805.

Additional facts will be addressed as relevant to discussion of the Appellants' points on appeal and the Cross-Appellants' point on appeal.

## Appellate Jurisdiction

Before addressing the merits of the Appellants' appeal and the Cross-Appellants' cross-appeal, we must first determine whether we have jurisdiction to consider their respective appeals.  "The right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists."  *Larson v. Winkler*, 690 S.W.3d 193, 199 (Mo. App. W.D. 2024) (quoting *Wilson v. City of St. Louis*, 600 S.W.3d 763, 767 (Mo. banc 2020)).

Section 512.020(5) provides that a party who is aggrieved by a judgment may appeal from any "[f]inal judgment in the case." As such, the entry of a final judgment is a prerequisite to appellate jurisdiction.  *Barrett v. Cole Cnty.*, 687 S.W.3d 685, 695 (Mo. App. W.D. 2024).  A judgment is considered final if it "resolves all claims by and against all parties, or it resolves the last such claim and some (but not all) claims have been

_____

[4]As of July 1, 2022, Rule 74.16 applies to a claim for attorney fees and related expenses "unless the substantive law requires those fees to be proved at trial as an element of damages."  Rule 74.16 requires a claim for attorney fees to be made in a separate motion and designates such a motion as an "independent action" and not an authorized after-trial motion.  It appears that the Cross-Appellants' purpose in filing their January 5, 2024 notice of appeal was to make clear that its challenge of the trial court's award of attorney fees and expenses was from the December 2023 Judgment, as the Appellants' Motion for Attorney Fees was an independent action pursuant to Rule 74.16.

All Rule references are to *Missouri Court Rules, Volume I -- State, 2023* unless otherwise indicated.

14

resolved previously." *Wilson*, 600 S.W.3d at 768 (quoting *State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 598 (Mo. banc 2019)).

An examination of the pleadings and the April 2022 Judgment, the September 2023 Judgment, and the December 2023 Judgment (collectively "Judgments") reveal that the trial court never explicitly disposed Count II insofar as it set forth Bhoot's claim against 701-709 Woods Chapel; Count IV insofar as it set forth Bhoot's claims of breach of contract against 701-709 Woods Chapel, Sabharwal, and Kaniewski; and Count V insofar as it set forth Bhoot's and Diamond Diagnostic's claims against Sabharwal and Kaniewski. A close review of the transcript and evaluation of applicable law indicates, however, that even though these claims were not referenced in the Judgments, the circumstances surrounding the litigation rendered explicit reference to these claims in the Judgments unnecessary.

With respect to Count II, Bhoot, like VSUJ and Diamond Diagnostic, sought judicial declarations that the Contracts had not been terminated and constituted "valid and existing agreements between the parties enforceable according to their terms and conditions"; and that 701-709 Woods Chapel had particular obligations under the Contracts.[5] As discussed *supra*, the April 2022 Judgment included declarations that the

_____

[5]In asking the trial court to declare that 701-709 Woods Chapel had particular obligations under the Contracts, the Appellants essentially pleaded a breach of contract action. *See Payne v. Cunningham*, 549 S.W.3d 43, 47-48 (Mo. App. E.D. 2018) (quoting *Cincinnati Cas. Co. v. GFS Balloons*, 168 S.W.3d 523, 525 (Mo. App. E.D. 2005)) ("A petition . . . that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more than a petition claiming breach of contract."). Breach of contract was the subject of Count III and Count IV, and

15

Contracts had not been terminated and instead constituted "valid and enforceable [agreements between the parties] according to their terms [and conditions]"; and that 701-709 Woods Chapel had breached those contracts by "failing to close on the [C]ontracts and deliver the [Property] and [medical] equipment to [the Appellants]." The April 2022 Judgment further found that Bhoot assigned his rights, interests, and obligations in the Real Estate Contract and the Amendment to the Real Estate Contract to VSUJ, and that Bhoot assigned his rights, interests, and obligations in the Medical Equipment Contract to Diamond Diagnostic. In other words, Bhoot no longer had any rights, interests, and obligations in the Contracts. The declaratory relief sought in Count II was thus complete in that "[a]ll the questions of right, status or other legal relations encountered in adjudicating the controversy" were settled by April 2022 Judgment. *See Law v. City of Maryville*, 933 S.W.2d 873, 878 (Mo. App. W.D. 1996).

With respect to Count IV, Bhoot, like VSUJ and Diamond Diagnostic, alleged that 701-709 Woods Chapel, Sabharwal, and Kaniewski breached the Contracts, and that as a result of that breach, Bhoot, like VSUJ and Diamond Diagnostic, suffered damages. At the time of the jury trial, the trial court had already concluded that 701-709 Woods Chapel breached the Contracts, leaving only the question of damages for the jury's determination. At trial, the Appellants' attorney acknowledged during the opening statement that Bhoot had assigned his rights under the Contracts to VSUJ and Diamond Diagnostic, and that the issue before the jury to determine was whether VSUJ and

---

the trial court explicitly found in the April 2022 Judgment that 701-709 Woods Chapel breached the contracts.

16

Diamond Diagnostic suffered damages. Moreover, the Appellants' attorney proposed jury instructions that, with respect to 701-709 Woods Chapel's breach of the Real Estate Contract and Amendment to the Real Estate Contract referenced only those damages suffered by VSUJ, and with respect to damages incurred from 701-709 Woods Chapel's breach of the Medical Equipment Contract referenced only those damages suffered by Diamond Diagnostic. Then, in closing argument, the Appellants' attorney asked the jury to return verdicts that represented the damages suffered by VSUJ and Diamond Diagnostic. In proceeding in this manner, Bhoot effectively abandoned any claim for damages suffered by breach of contract. *See State ex rel. Kansas City v. Campbell*, 505 S.W.3d 299, 300 (Mo. App. W.D. 2016) ("This court consistently finds that theories of liability pleaded but not submitted to the jury are abandoned."). Abandoned causes of action need not be memorialized for a judgment to be considered final and appealable. *Heckadon v. CFS Enters., Inc.*, 400 S.W.3d 372, 377 n.3 (Mo. App. W.D. 2013).

With respect to Count V, Bhoot and Diamond Diagnostic, like VSUJ, sought a judgment finding 701-709 Woods Chapel to be the alter ego of Sabharwal and Kaniewski so that Sabharwal and Kaniewski are personally liable for the claims asserted by the Appellants. A claim seeking to pierce the corporate veil of a limited liability company is an assertion that the limited liability company is merely an alter ego of its member(s) so that the member(s) should be personally liable for a debt owed by the limited liability company. *May v. Williams*, 531 S.W.3d 576, 585 (Mo. App. W.D. 2017). Neither Bhoot nor Diamond Diagnostic were awarded damages with respect to the claims they alleged against 701-709 Woods Chapel so that Count V was moot as to both. The Judgments'

17

failure to address Count V as it applies to Bhoot and Diamond Diagnostic does not deprive us of appellate jurisdiction. *See FH Partners, LLC v. Complete Home Concepts, Inc.*, 378 S.W.3d 387, 393 n.4 (Mo. App. W.D. 2012) ("If a judgment implicitly resolves a pending claim, the judgment may still be a final judgment for purposes of appeal even though it makes no explicit reference to the claim.").

The Judgments, when considered together and in the context of the particular circumstances of this case, are final for the purposes of appeal so that we have jurisdiction to consider the Appellants' three points on appeal and the Cross-Appellants' single point on cross-appeal.

## Analysis

We address the Appellants' points on appeal and the Cross-Appellants' points on cross-appeal separately.

### *The Appellants' Points One and Two: Specific Performance*

The Appellants' first and second points on appeal challenge the trial court's refusal to order specific performance of the Contracts.[6]  In their first point on appeal, the Appellants challenge the trial court's conclusion in the April 2022 Judgment that there was no credible evidence that the Property and medical equipment were unique enough to justify specific performance as a remedy ("Point One").  The Appellants argue in Point One that the Property, as a piece of real estate, is inherently unique as a matter of law and

---

[6]Though the first and second points an appeal are asserted collectively by all three Appellants, Bhoot is not aggrieved by the trial court's refusal to order specific performance of the Contracts, both of which had been assigned by Bhoot to either VSUJ or Diamond Diagnostics.

18

the purchase of the medical equipment was conditioned on the purchase of the Property, thereby rendering specific performance the appropriate remedy for the breach of the Medical Equipment Contract. In their second point on appeal, the Appellants assert that the trial court committed error in concluding that specific performance was not available to the Appellants pursuant to the unclean hands doctrine ("Point Two"). Point Two claims that there was "no evidence of unclean hands attributable to Bhoot, VSUJ, or Diamond [Diagnostic]" because the communications were made in good faith in an attempt to receive the benefits of the Contracts.

The availability of specific performance for 701-709 Woods Chapel's breach of the Contracts was determined during a bench trial. We review all court-tried cases using the standard articulated by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* at 32. In resolving points on appeal that challenge the factual determinations by the trial court, we view the evidence and reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment and defer to any credibility determinations made by the trial court. *Coleman v. Hartman*, 626 S.W.3d 289, 295 (Mo. App. W.D. 2021).

"Specific performance is purely an equitable remedy and must be governed by equitable principles." *Brown v. Smith*, 601 S.W.3d 554, 559 (Mo. App. W.D. 2020) (quoting *Smith v. Najafi*, 584 S.W.3d 389, 394 (Mo. App. W.D. 2019)). As an equitable remedy, "specific performance is not a matter of right" so that "the trial court has judicial

19

discretion within the established doctrines and principles of equity to award or withhold the remedy" based on the facts before it. *Id.* (quoting *Smith*, 584 S.W.3d at 394). Specific performance is ordered so that "justice may be done between the parties, and courts of equity will not decree specific performance where it will result in injustice." *Kopp v. Franks*, 792 S.W.2d 413, 419 (Mo. App. S.D. 1990). Thus, "[a] greater strength of case is required for a decree of specific performance than to defeat a claim for specific performance." *Id.* A trial court "is afforded much discretion" in determining whether specific performance is an appropriate remedy for breach of contract. *McBee v. Gustaaf Vandecnocke Revocable Tr.*, 986 S.W.2d 170, 173 (Mo. banc 1999).

If there is an adequate remedy at law, the trial court lacks authority to grant equitable relief. *Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 16 (Mo. banc 2013). Reference to the adequacy of a remedy at law "typically means that damages will adequately compensate the plaintiff for the injury or threatened injury." *Amalaco, LLC v. Butero*, 593 S.W.3d 647, 653 (Mo. App. E.D. 2019) (citing *Walker v. Hanke*, 992 S.W.2d 925, 933 (Mo. App. W.D. 1999)).

Even if a remedy at law would be inadequate to compensate the plaintiff for a breach of contract, there are other equitable considerations that the trial court must weigh in determining whether ordering specific performance would result in an injustice. Among those is the doctrine of unclean hands, which "is a defense that bars one who has acted wrongfully with respect to the subject of the suit from obtaining an equitable remedy." *JAS Apartments, Inc. v. Naji*, 230 S.W.3d 354, 363 (Mo. App. W.D. 2007) (quoting *Sangamon Assocs., Ltd. v. Carpenter 1985 Family P'ship, Ltd.*, 165 S.W.3d 141,

20

145 (Mo. banc 2005)). "Such conduct as will disqualify a party from equitable relief need not be fraudulent, but simply indicative of a lack of good faith in the subject matter of the suit." *Med. Plaza One, LLC v. Davis*, 552 S.W.3d 143, 160 (Mo. App. W.D. 2018) (quoting *State ex rel. Sasnett v. Moorhouse*, 267 S.W.3d 717, 723 (Mo. App. W.D. 2008)).

In its April 2022 Judgment, the trial court rested its denial of specific performance on two bases: (1) the absence of credible evidence before it that either the Property or the medical equipment is sufficiently unique as to render damages an inadequate remedy for 701-709 Woods Chapel's breach of the Contracts; and (2) the Appellants' unclean hands. If either basis independently supports the trial court's refusal to award specific performance as a remedy for 701-709 Wood Chapel's breach of the Contracts, the discussion of the alternative basis will be rendered unnecessary.

The April 2022 Judgment explicitly concluded that "Bhoot's threats to not perform through his communications to Sabharwal" constituted unclean hands so that the Appellants were precluded from securing the equitable remedy of specific performance of the Contracts. The trial court's conclusion is supported by ample evidence of Bhoot's behavior before the execution of the Real Estate Contract and the Medical Equipment Contract; before the execution of the Amendment to the Real Estate Contract; and following the execution of the Amendment to the Real Estate Contract. Sabharwal testified at the September 3, 2021 bench trial that, when Bhoot contacted him in early 2021 about purchasing the Property, the Property was not for sale at the time. Bhoot attempted to negotiate with Sabharwal by calling, emailing, and texting repeatedly.

21

Sabharwal testified that he signed the "Contract[s] to get [Bhoot] off my back." Sabharwal told Bhoot that he would be willing to sell the Property for $1.6 million and the medical equipment for $500,000 so long as Bhoot's purchase of one was contingent on the other. Sabharwal advised Bhoot, however, that while he did not object to the Contracts including a period for due diligence that would permit Bhoot to cancel the Contracts if he wanted, Sabharwal would "not [be] doing anything to" the Property or the medical equipment, as everything was being sold "as is." Then, after inspections revealed faults in the Property and the medical equipment, Bhoot called Sabharwal repeatedly insisting on repairs to the Property and the medical equipment. Sabharwal initially resisted what he characterized as Bhoot's "harassment," but ultimately told Bhoot that he would "give [Bhoot] $100,000" and signed the Amendment to the Real Estate Contract. That did not end Bhoot's persistence. When Sabharwal began removing items from the Property that were not the subject of the Contracts, in order to give Bhoot "a clean building" suitable for a radiology practice, Bhoot sent a series of threatening emails to Sabharwal, the last of which purportedly instructed: "Terminate this contract until this matter is resolved." Though the trial court initially granted the Appellant's temporary injunctive relief to prevent the Cross-Appellants from removing items from the Property the temporary ordered was soon dissolved, and ultimately the trial court entered judgment in favor of the Cross-Appellants on the Appellants' claim for injunctive relief.

The doctrine of unclean hands "does not apply to every unconscientious act or inequitable conduct on the part of a plaintiff." *Nelson v. Emmert*, 105 S.W.3d 563, 568 (Mo. App. S.D. 2003). The doctrine of unclean hands applies "only when the plaintiff's

22

improper conduct is the source, or part of the source, of his equitable claim." *Kay v. Vatterott*, 657 S.W.2d 80, 83 (Mo. App. E.D. 1983). "What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts." *Id.* Given Bhoot's negotiation tactics, it was reasonable for the trial court to conclude that Bhoot was not acting in good faith when he persisted in demanding concessions to the Contracts, and when he purportedly terminated the Contracts, leading Sabharwal, as a member of 701-709 Woods Chapel, to accept the termination of the Contracts and to instruct all, including the real estate broker representing 701-709 Woods Chapel, to take no further action. While the trial court found in the April 2022 Judgment that the Contracts had not been effectively rescinded by mutual consent, the evidence nonetheless supported the trial court's conclusion that the Appellants (and in particular Bhoot) acted with unclean hands during the parties' contractual dealings, and thus in acquiring the very rights the Appellants now seek to enforce by specific performance. Bhoot's June 21, 2021 email purporting to terminate the Contracts was ***the catalyst*** of 701-709 Woods Chapel's breach of the Contracts, and thus for the relief of specific performance sought by the Appellants in Count III. *See Kay*, 657 S.W.2d at 83.

Undeterred, the Appellants point to Sabharwal's email communications in response to Bhoot's June 21, 2021 email purporting to terminate the Contracts, and claim they demonstrate that 701-709 Woods Chapel was acting in bad faith such that it should not be permitted to benefit from the unclean hands doctrine as a means of depriving the Appellants of specific performance of the Contracts. The Appellants are correct that we have previously held that "the unclean hands defense 'will not aid wrongdoers who

23

attempt to use it as a shield for their own misconduct.'" *Pony Express Cmty. Bank v. Campbell*, 206 S.W.3d 399, 402 (Mo. App. W.D. 2006). However, that principle is inapplicable where the purported bad faith the Appellants attribute to 701-709 Woods Chapel was triggered by the preceding bad faith conduct of the Appellants. It is clear from the record that the trial court weighed whether complete justice would result from granting the Appellants specific performance of the Contracts and concluded it would not because Bhoot would reap the benefit of his unfounded threats to terminate the Contracts. Point Two is denied.

Because the April 2022 Judgment's denial of specific performance can be affirmed based on the unclean hands doctrine, we need not address whether it can also be affirmed on the basis that the Property and medical equipment were not unique enough to support specific performance as a remedy, the subject of the Appellants' Point One. Point One is therefore denied as moot.

***The Appellants' Point Three: Inconsistent Verdicts***

The Appellants' third point on appeal challenges the award of damages to VSUJ on Count IV, the claim for breach of contract damages, following the jury trial ("Point Three").[7] Point Three alleges that the jury returned inconsistent verdicts in favor of

---

[7]Point Three frames the error on appeal as "jury err[or]." Doing so is contrary to Rule 84.04(d)(1), which requires every point relied on to "[i]dentify the ***trial court ruling or action*** that the appellant challenges." (Emphasis added.) In a jury trial, it is the jury's responsibility as factfinder to issue a verdict, but it is the responsibility of the trial court to enter a judgment memorializing the verdict to judgment. *See Hill v. Hyde*, 14 S.W.3d 294, 297 (Mo. App. W.D. 2000) ("A trial court has inherent power to take corrective action before the verdict is recorded and made part of the judgment."). Despite this

24

VSUJ on Count IV because there was insufficient competent evidence to permit the jury to award VSUJ damages related to lost rental revenue on two of the leases it signed with prospective tenants for the Property without also awarding damages for the other two leases.[8]  The Cross-Appellants assert that Point Three is unpreserved for appellate review because the Appellants neither objected to the jury's verdicts nor filed a motion for new trial to challenge the verdicts' inconsistency.

Since 1986, Missouri courts have held that "a party must object to verdicts as inconsistent before the jury is discharged so that the jury can return for further deliberation to correct the error." *Morelock v. Highland Springs Cmty. Ass'n*, 679 S.W.3d 115, 121 (Mo. App. S.D. 2023) (citing *Douglass v. Safire*, 712 S.W.2d 373, 374 (Mo. banc 1986)).  This requirement "is in accord with the usual rule that the trial court must be given the opportunity to correct error while correction is still possible." *Id.* at 121-22 (quoting *Douglass*, 712 S.W.2d at 374).  As such, a party who fails to object to the verdicts before a jury is discharged waives any objection to consistency of the verdicts. *Id.* at 122.  A post-trial motion that challenges the consistency of the verdicts does not cure the failure to object before the jury is dismissed.  *Id.*

Here, the jury returned its verdicts, and the trial court asked the parties, "Is there any record that either of you wish to make as it pertains to the verdict forms and the verdicts?"  The Appellants' attorney answered, "No, your Honor."  The jury was then

---

briefing error, we are able to ascertain the Appellants' claim of error on appeal and address the argument made by the Appellants in Point Three.
    [8]Though Point Three on appeal is purportedly asserted by all three Appellants, it plainly involves only VSUJ.

polled at the request of the Appellants' attorney. Then, the trial court asked the Appellants' attorney whether there was any reason not to excuse the jury at that time. The Appellants' attorney again answered, "No, your Honor." At that point, the Appellants waived any objection to consistency of the verdicts so that the argument set forth in Point Three is not preserved for appellate review.

Point Three is denied.

### *The Cross-Appellants' Point: Attorney Fees*

The Cross-Appellants set forth a single point on appeal in which they challenge the trial court's award of attorney fees and expenses to VSUJ ("Cross-Appeal Point One"). Cross-Appeal Point One asserts that "VSUJ failed to present substantial competent evidence of reasonable attorney fees and case expenses incurred to obtain a judgment in VSUJ's favor on Count IV." The Cross-Appellants claim that a total award of $162,440.83 for attorney fees and expenses was "grossly and significantly higher" than what would be reasonable to secure VSUJ's judgment on Count IV. The Cross-Appellants argue that the Motion for Attorney Fees "ma[de] no attempt whatsoever to delineate between attorney fees and expenses spent by VSUJ on Count IV versus attorney fees and expenses spent by Bhoot and Diamond [Diagnostic], and versus attorney fees and expenses spent by Plaintiff VSUJ on Counts I, II, III and V."[9]

---

[9]Cross-Appellants' argument mistakenly fails to credit VSUJ with success on Count V, as the trial court found that Sabharwal was the alter ego of 701-709 Woods Chapel, and was thus personally liable for the judgment entered against the corporate entity in favor of VSUJ on Count IV.

26

"Missouri courts follow the American Rule, which provides that, in the absence of statutory authorization or contractual agreement, with few exceptions, parties bear the expense of their own attorney fees." *Wiedner v. Ferrellgas, Inc.*, 662 S.W.3d 842, 847 (Mo. App. W.D. 2023) (quoting *Wilson v. City of Kansas City*, 598 S.W.3d 888, 896 (Mo. banc 2020)).  Here, the Real Estate Contract provided that, in the event of a breach and should either party retain an attorney to enforce its rights, the defaulting party "shall, unless prohibited by law, reimburse the non-defaulting party for all reasonable attorneys' fees, court costs, and other legal expenses incurred by the non-defaulting party in connection with the default."  As such, the award of attorney fees to VSUJ was contractually authorized.

When attorney fees are permissible, "[t]he determination of reasonable attorney's fees is generally committed to the trial court's discretion." *Alhalabi v. Mo. Dep't of Corr.*, 662 S.W.3d 180, 194 (Mo. App. W.D. 2023).  Given "its familiarity with all of the issues in the case and with the character of the legal services rendered," the trial court is considered an expert on attorney fees and may make an award without the aid of evidence. *Id.* (quoting *Terpstra v. State*, 565 S.W.3d 229, 249 (Mo. App. W.D. 2019)).  The trial court is not bound by the number of hours worked or by a particular hourly rate. *Wiedner*, 662 S.W.3d at 847.  Instead, the trial court may consider several factors when making an award, including the following:

> 1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the

27

nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition.

*WingHaven Residential Owners Ass'n v. Bridges*, 457 S.W.3d 383, 386 (Mo. App. E.D. 2015) (quoting *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 878 (Mo. App. E.D. 2009), *overruled on separate grounds by Wilson*, 598 S.W.3d at 895). We review the trial court's determination of an award for abuse of discretion, reversing only if "the amount awarded is arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration." *Wiedner*, 662 S.W.3d at 847 (quoting *Tate v. AutoZoners, L.L.C.*, 363 S.W.3d 179, 182 (Mo. App. S.D. 2012)).

The Cross-Appellants' position on appeal can best be described as an argument that the trial court abused its discretion in awarding VSUJ $162,440.83 for attorney fees and expenses because the trial court did not have enough information to determine that the attorney fees and expenses were attributable to litigating Count IV on VSUJ's behalf. An examination of the record on appeal broadly and the Motion for Attorney Fees specifically reveals that Cross-Appeal Point I is without merit.

The Cross-Appellants are correct that the Appellants filed the Motion for Attorney Fees collectively even though neither Bhoot nor Diamond Diagnostic were awarded damages for 701-709 Woods Chapel's breach of the Real Estate Contract. But, while the motion was technically filed in the name of all three of the Appellants, the prayer for relief was limited to "VSUJ['s] respectful[] request [for an] award [of] attorney fees and expenses herein." The December 2023 Judgment which awarded attorney's fees and expenses to VSUJ is consistent with the prayer for relief in the Motion for Attorney Fees.

28

The Motion for Attorney Fees set forth a detailed summary of the two-year procedural history of the litigation, and detailed the legal expertise required to litigate the case over the course of two bench trials and one jury trial. The Motion for Attorney Fees included affidavits from the two attorneys who represented VSUJ during the course of litigation as well as a survey of billing rates of Missouri attorneys and their support staff. There is nothing in the Motion for Attorney Fees or in the exhibits attached to the Motion that leads us to conclude that the trial court's award of attorney fees and expenses was arbitrary or unreasonable.

Instead, the record on appeal indicates VSUJ's two attorneys, each of which have more than twenty-years' experience, shepherded this case through requests for preliminary relief, three rounds of pleadings, a bench trial which addressed whether 701-709 Woods Chapel breached the Real Estate Contract, a jury trial which addressed whether VSUJ was entitled to damages for 701-709 Woods Chapel's breach of the Real Estate Contract, and a bench trial on the subject of whether VSUJ could collect its award of damages for breach of the Real Estate Contract from Sabharwal because 701-709 Woods Chapel's assets were distributed following the sale of the Property. In light of the length and complexity of the case, some of which was the direct result of 701-709 Woods Chapel's distribution of the proceeds of the sale of the Property at the direction of Sabharwal, we cannot find that the trial court abused its discretion in awarding VSUJ attorney fees and expenses totaling $162,440.83.

Cross-Appeal Point One is denied.

29

**Conclusion**

The Judgments are affirmed.

_____
Cynthia L. Martin, Judge

All concur